

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:16-CR-256 |
| | ) |
| ISMAEL ENRIQUE TURIAN MIRANDA, | ) |
| a/k/a "Gordo" | ) |
| | ) |
| Defendant. | ) |

STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. From in and around at least February 2016 to in and around November 2016, both dates being approximate and inclusive, within the jurisdiction of the United States and in an offense begun and committed outside the jurisdiction of a particular state or district, including in Colombia and Honduras, the defendant, ISMAEL ENRIQUE TUIRAN MIRANDA, also known as "Gordo," did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, known and unknown, to unlawfully, knowingly, and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending and knowing, or having reasonable cause to believe that some or all of such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960 and 963.

2. From at least February 2016 until at least November 2016, ISMAEL ENRIQUE TUIRAN MIRANDA (hereinafter "MIRANDA") conspired with individuals based in Santa

1

Marta, Colombia, to facilitate and conduct a multi-hundred kilogram cocaine transaction, with a portion of the cocaine being destined for the United States. MIRANDA conducted and led negotiations between individuals based in Santa Marta, Colombia and purported himself as a high-ranking drug trafficker in Colombia responsible for the transportation and distribution of multi-thousand kilograms of cocaine via semi-submersible submarines. MIRANDA conspired with multiple drug traffickers to include Carlos Mario Mejia Lopez (a/k/a "Julian"), Luis Rogelio Lozano Correa (a/k/a "El Negro," a/k/a "Nino"), Ludwick Mark Stephen Ibarra Franco (a/k/a "Stephen"), Jorge Emiro Barbosa Alvarez (a/k/a "Juan") and other drug traffickers, to include members of MIRANDA's family.

3. As a facilitator, MIRANDA conspired with others to import multi-hundred kilogram quantities of cocaine from South America to Central America and Mexico, a portion of which would be transported to the United States. MIRANDA participated in meetings between drug smugglers of international drug trafficking organizations (DTOs) to discuss multi-hundred kilogram cocaine transactions. Further, MIRANDA made introductions between drug traffickers of various DTOs.

4. In an around 2016, MIRANDA, on behalf of a DTO based in Santa Marta, Colombia, facilitated and took part in negotiations between a Colombian DTO, cooperating sources and a Honduras DTO for the distribution of more than five kilograms of cocaine. These negotiations, some of which are described below, included meetings, phone calls, and electronic communications.

5. On or about February 29, 2016, MIRANDA, cooperating sources and Carlos Mario Mejia Lopez met in Santa Marta, Colombia to discuss a cocaine transaction and view potential semi-submersible vessels that could be used for transportation of the cocaine. During

this meeting, MIRANDA indicated he would require $1 million U.S. currency to provide a submarine.

6. In and around March 2016, MIRANDA sent a cooperating source a picture via Blackberry messenger of several hundred kilograms of cocaine and asked the cooperating source to transport the cocaine to Honduras with the understanding that the cocaine would be further distributed in the United States.

7. On or about April 5, 2016, MIRANDA, Carlos Mario Mejia Lopez, Luis Rogelio Lozano Correa and cooperating sources met in Santa Marta, Colombia to discuss the transportation of 300 to 460 kilograms of cocaine to Honduras. During this meeting, MIRANDA indicated he could transport 300-450 kilograms of cocaine to Honduras, where half of the shipment would be sold and the remaining would be transported to Baltimore, Maryland in the United States.

8. On or about April 18, 2016, law enforcement authorities lawfully intercepted communications between CS-1 and MIRANDA. During this communication, MIRANDA and CS-1 discussed meeting in Honduras in the future and that they would continue negotiations for the cocaine transaction via telephone.

9. On or about April 25, 2016, law enforcement authorities lawfully intercepted communications between CS-1 and MIRANDA. During this communication, MIRANDA informed CS-1 that he [MIRANDA] had 300 kilograms of cocaine ready to distribute to the cooperating sources for transportation from Colombia, through Honduras and into the United States.

10. On or about May 31, 2016, law enforcement authorities lawfully intercepted communications between CS-1 and MIRANDA. During this communication, MIRANDA and

CS-1 continued to discuss cocaine negotiations. During the call, MIRANDA indicated to the cooperating source that he [MIRANDA] spoke with Carlos Mario Mejia Lopez regarding a pending cocaine transaction.

11. On or about June 04, 2016, law enforcement authorities lawfully intercepted communications between CS-1 and MIRANDA. During this communication, MIRANDA and CS-1 continued to discuss cocaine negotiations. During the call, MIRANDA indicated to the cooperating source that he [MIRANDA] would provide sample kilograms of cocaine to the cooperating sources.

12. On or about June 06, 2016, law enforcement authorities lawfully intercepted communications between CS-1 and MIRANDA. During this communication, MIRANDA and CS-1 continued to discuss cocaine negotiations. During the call, MIRANDA again indicated to the cooperating source that he [MIRANDA] would provide sample kilograms of cocaine to the cooperating sources.

13. On or about June 8, 2016 MIRANDA and an unindicted co-conspirator (UCC-1), met with cooperating sources in Santa Marta, Colombia and accepted $4,000 in US currency from the cooperating sources as a down payment on five kilograms of cocaine. MIRANDA attempted to provide the cooperating sources with two kilograms of cocaine with the promise of multi-hundred in the future, however the cooperating sources explained that they wanted a larger sample and would not accept the two kilograms of cocaine.

14. On or about June 11 and June 13, 2016, MIRANDA sent cooperating sources a picture via Blackberry messenger of what appeared to be five kilograms of cocaine. The cooperating source indicated that MIRANDA was purporting that the kilogram samples were ready and the cooperating sources could therefore transport them to the United States.

15. On or about July 12-13, 2016, Luis Rogelio Lozano Correa, Ludwick Mark Stephen Ibarra Franco and Jorge Emiro Barbosa Alvarez conducted a five kilogram cocaine transaction with a cooperating source and undercover law enforcement officer. Prior to this transaction, MIRANDA's son attempted to obtain kilograms of cocaine from Ludwick Mark Stephen Ibarra Franco and Jorge Emiro Barbosa Alvarez to provide to the cooperating defendants.

16. In and around December 2018, MIRANDA was interviewed by law enforcement. Among other things, MIRANDA stated he met two cooperating sources through Luis Rogelio Lozano Correa after the cooperating sources had tried to arrange a large cocaine transaction with Lozano Correa. As a result, Lozano Correa reached out to MIRANDA because he [MIRANDA] "knows a lot of people." Through one of the cooperating sources, MIRANDA was introduced to Carlos Mario Mejia Lopez. MIRANDA stated he attended two meetings with the cooperating sources and Carlos Mario Mejia Lopez, and a third meeting with just the cooperating sources. MIRANDA further admitted to law enforcement that he discussed transporting cocaine out of Colombia with two cooperating sources, however his real intention was to rob the cooperating sources of their money, which was first negotiated to be $1 million U.S. currency.

17. During the course and in furtherance of the conspiracy, the defendant was personally involved in, or it was reasonably foreseeable to MIRANDA that his co-conspirators distributed in excess of 450 kilograms of a mixture and substance containing a detectable amount of cocaine.

18. The acts taken by the defendant, ISMAEL ENRIQUE TUIRAN MIRANDA in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges

that the foregoing statement of facts does not describe all the defendant's conduct relating to the offense charged in this case nor does it identify all the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

19. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Lena Munasifi
Special Assistant United States Attorney (LT)

After consulting with my attorney and pursuant to the plea agreement entered this day between the defendant, ISMAEL ENRIQUE TUIRAN MIRANDA, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 3/13/15

ISMAEL ENRIQUE TUIRAN MIRANDA
Defendant

I am ISMAEL ENRIQUE TUIRAN MIRANDA's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 3/13/15

Michael Arif
Counsel for the Defendant